**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGELICA DELEON, | : | |
| PLAINTIFF, | : | |
| | : | |
| VS. | : | DOCKET NO. 4:26-CV-3015 |
| | : | |
| GERALD CASSIDY AND | : | |
| RYCO LEASE AND REPAIR, INC., | : | |
| DEFENDANTS. | : | JURY TRIAL DEMANDED |

**COMPLAINT**

AND NOW, comes Plaintiff Angelica Deleon, complains against Defendants Gerald Cassidy ("Cassidy") and RYCO Lease and Repair, Inc. ("RYCO Lease"), as follows:

**THE PARTIES**

1. Plaintiff, Angelica Deleon, is an adult individual residing at 25 Hillside Drive, Danville, Montour County, Pennsylvania, 17821.

2. Defendant Gerald Cassidy is an adult individual who, upon information and belief, resides at 5 Grist Mill Holw #63, Londonderry, Rockingham County, New Hampshire, 03053.

3. At all relevant times, Defendant Cassidy was the servant, workman, employee and/or agent of Defendant RYCO Lease and Repair, Inc. acting within the course and scope of his employment and/or agency with them, and acting under the direction, control and authority of Defendant RYCO Lease and Repair, Inc.,

and was a permissive user on behalf of Defendant RYCO Lease and Repair, Inc. of the tractor trailer involved in the crash.

4. Defendant RYCO Lease and Repair, Inc. is, upon information and belief, a Massachusetts for-profit corporation, authorized to do business in Pennsylvania, with a registered office and principal office at 607A Wareham Street, #4001, Middleboro, Massachusetts, 02346, with a USDOT number of 2052005 and an MC number of MC-718694.

5. At all relevant times, RYCO Lease and Repair, Inc. was the owner of a 2018 Kenworth Northwest Glider truck, VIN 1NKWGGGGOOJ212407, and was the owner of the flatbed and semi-trailer, being operated by Defendant Cassidy.

6. At all times relevant hereto, Defendant RYCO Lease and Repair, Inc. was or should have been an interstate motor carrier authorized to transport goods in interstate commerce and in the Commonwealth of Pennsylvania pursuant to permits issued by the Interstate Commerce Commission and by the United States Department of Transportation.

7. Defendant RYCO Lease and Repair, Inc. was subject to all state and federal laws, statutes, regulations, and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, including, without limitation, Pennsylvania statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations set

forth in Chapter III, subchapters A and B, of the Code of Federal Regulations, Title 49.

8. Defendant RYCO Lease and Repair, Inc. was required to submit OP-1 forms containing a Safety Certification that it had access to and was familiar with all United States Department of Transportation regulations relating to safe operation of commercial motor vehicles and that it will comply with the Federal Motor Carrier Safety Regulations (the "FMCSRs") while in the operation of commercial motor vehicles in the United States.

9. Each OP-1 form contained the following certifications that Defendant RYCO Lease and Repair, Inc.:

a. had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

b. can produce a copy of the FMCSRs;

c. had and will have in place a driver safety training/orientation program;

d. had and will have prepared and maintain an accident register;

e. are familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualifications requirements;

f. had and will have in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;

g. are familiar with, and had and will have a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

h. must comply with all pertinent Federal, State, local and tribunal statutory and regulatory requirements when operating within the United States.

10. Defendant Cassidy was a class A licensed commercial motor vehicle operator driving the 2018 Kenworth Norwest Glider tractor trailer owned, leased, assigned to, and/or operated by Defendant RYCO Lease and Repair, Inc.

11. Defendant Cassidy was subject to all state and federal laws, statutes, regulations, and industry standards governing the safe operation of commercial motor vehicles, including, without limitation, Pennsylvania statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations set forth in Chapter III, subchapters A and B, of the Code of Federal Regulations, Title 49.

12. At all material times, the 2018 Kenworth Norwest Glider truck and semi-trailer were owned, leased and/or operated by Defendant RYCO Lease and Repair, Inc. and were being operated and/or controlled by Defendant Cassidy with

the consent of Defendant RYCO Lease and Repair, Inc. and for the financial benefit of Defendant RYCO Lease and Repair, Inc.

13. At all material times, Defendant Cassidy was employed by and/or contracted to perform services for and was operating the 2018 Kenworth Norwest Glider truck and semi-trailer for Defendant RYCO Lease and Repair, Inc. under Defendant RYCO Lease and Repair, Inc.'s USDOT operating authority and was subject to its supervision, control or right to control, such that Defendant RYCO Lease and Repair, Inc. should be considered his actual and statutory employer and therefore vicariously liable for Defendant Cassidy's negligence, carelessness and recklessness.

14. At all material times, Defendant Cassidy was the agent of Defendant RYCO Lease and Repair, Inc. vested with actual and/or apparent authority of Defendant RYCO Lease and Repair, Inc.

15. At all material times, Defendant RYCO Lease and Repair, Inc. should have known about the requirements of Pennsylvania law governing the operation of oversized and overweight vehicles, including the prohibition on operating such vehicles between sunset and sunrise pursuant to 67 Pa.C.S. Section 179.10 and 75 Pa.C.S.A. Section 4962.

16. At all material times, Defendant RYCO Lease and Repair, Inc. should have known about the requirements of Federal Motor Carrier Safety Regulations

governing lighting, conspicuity, and safe operation of commercial motor vehicles, including 49 C.F.R. Sections 392.2, 392.14, 392.22, and 393.11.

17. At all material times, Defendant RYCO Lease and Repair, Inc. should have known that operating an oversized commercial vehicle with obstructed reflective markings and inadequate lighting in pre-dawn conditions created an unreasonable risk of serious harm to the motoring public.

18. At all material times, Defendant RYCO Lease and Repair, Inc. should have known that operating an oversized commercial vehicle before sunrise in violation of state and federal regulations created an unreasonable risk of serious harm to the motoring public.

19. At all material times, the Federal Motor Carrier Safety Regulations apply to this matter, pursuant to Pennsylvania Code.

20. At all material times, Plaintiff Angelica Deleon acted with due care and in no way contributed to this crash.

21. At all material times, Defendant RYCO Lease and Repair, Inc. had a documented roadside inspection history with FMCSA/SAFER, including vehicle and hazardous-material out-of-service findings within the 24 months preceding February 17, 2025.

22. At all material times, Defendant RYCO Lease and Repair, Inc.'s reported vehicle out-of-service rate was 25%, exceeding the national average of 22.26%.

23. At all material times, Defendant RYCO Lease and Repair, Inc. was aware or should have been aware of its safety inspection record, which demonstrated repeated non-compliance with Federal Motor Carrier Safety Regulations.

24. At all material times, Defendant RYCO Lease and Repair, Inc. knew or should have known that its pattern of safety violations and non-compliance created an unreasonable risk of harm to the motoring public.

25. Defendants acted in a manner that either alone, combined, and/or occurring with the actions of each Defendant, directly and proximately caused the crash and resulting catastrophic injuries suffered by Plaintiff Angelica Deleon.

## **JURISDICTION AND VENUE**

26. This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of Pennsylvania, Defendant Cassidy is a citizen of New Hampshire, Defendant RYCO Lease and Repair, Inc.'s principal place of business is in Massachusetts, and the amount in controversy exceeds $150,000.00.

27. Venue is proper in the Middle District of Pennsylvania as the crash occurred on Sunbury Road in Riverside Borough, Northumberland County, Pennsylvania, which is within this judicial district.

## THE NOVEMBER 7, 2024 CRASH

28. Plaintiff incorporates the above-referenced paragraphs herein as though fully set forth.

29. On November 7, 2024, at approximately 6:29 a.m., Plaintiff Angelica Deleon was lawfully operating her 2003 Chevrolet Malibu vehicle southbound on Sunbury Road (also known as State Route 147) in the right travel lane near its intersection with Avenue D in Riverside Borough, Northumberland County, Pennsylvania.

30. Sunbury Road is a two-lane state highway with one lane of travel in each direction, with a posted speed limit of 35 miles per hour.

31. The section of Sunbury Road where the crash occurred is straight and flat, with level gradient and no curves or hills.

32. At the time of the crash, lighting conditions were severely compromised as the incident occurred approximately sixteen minutes before sunrise, which was scheduled for 6:45 a.m. that morning.

33. The crash occurred during the pre-dawn period when natural daylight had not yet illuminated the roadway, creating conditions of darkness and severely limited visibility for motorists.

34. At the same time, Defendant Cassidy was operating a 2018 Kenworth Northwest Glider semi-truck tractor pulling a flatbed semi-trailer, owned and operated by Defendant RYCO Lease and Repair, Inc., traveling northbound on Avenue D in Riverside Borough, Northumberland County, Pennsylvania.

35. The semi-trailer being operated by Defendant Cassidy was hauling excavator tracks that had been loaded at Merck & Co. Inc. in Riverside, Pennsylvania, with the load destined for transport back to the state of New Hampshire.

36. The load of excavator tracks constituted an oversized load that extended beyond the legal width limitations for standard vehicles and obstructed the reflective markings and conspicuity tape on the sides of the trailer.

37. The excavator tracks extended beyond the edge of the flatbed trailer, with the width of the load exceeding ten feet and thereby exceeding the standard legal width of 8.5 feet for commercial vehicles.

38. As Defendant Cassidy approached the intersection of Avenue D and Sunbury Road, he attempted to execute a left-hand turn from Avenue D onto Sunbury Road.

39. As Defendant Cassidy executed his left-hand turn onto Sunbury Road, his tractor-trailer combination blocked both the northbound and southbound lanes of Sunbury Road.

40. The flatbed trailer being operated by Defendant Cassidy was positioned laterally across the southbound lane of Sunbury Road, directly in the path of Plaintiff's oncoming vehicle.

41. At the time Defendant Cassidy's trailer occupied the southbound lane of Sunbury Road, the tractor-trailer was either stationary or moving at slow speed as it was in the process of making the turn.

42. The flatbed trailer lacked illumination or lighting on its sides, making it effectively invisible to southbound motorists approaching in the pre-dawn darkness.

43. The oversized load of excavator tracks obstructed and covered the required reflective markings, reflective tape, and conspicuity materials that are mandated to be displayed on the sides of commercial trailers.

44. The tractor portion of Defendant Cassidy's vehicle appeared to be positioned in the northbound lane, opposite to Plaintiff's direction of travel.

45. Due to the pre-dawn lighting conditions, the lack of side illumination on the trailer, and the obstruction of reflective markings by the oversized load, the

trailer was not readily visible or conspicuous to Plaintiff as she approached traveling southbound on Sunbury Road.

46. The lack of adequate lighting and conspicuity on the trailer, combined with the pre-dawn darkness occurring sixteen minutes before sunrise, created a condition in which the trailer spanning across the southbound lane was difficult or impossible for approaching motorists to perceive in sufficient time to avoid collision.

47. At the time of the crash, Defendant Cassidy was operating the oversized load in violation of 67 Pa.C.S. Section 179.10 and 75 Pa.C.S.A. Section 4962, which prohibit the operation of oversized and overweight vehicles on Pennsylvania roadways between sunset and sunrise.

48. The Defendants knew, or should have known that Pennsylvania law specifically prohibits the movement of oversized loads during the hours of darkness between sunset and sunrise due to the conspicuity and visibility hazards that such loads present to other motorists in low-light conditions.

49. Defendant Cassidy was operating the oversized load at 6:29 a.m., which was sixteen minutes before the scheduled sunrise time of 6:45 a.m., and therefore in direct violation of Pennsylvania's prohibition on pre-sunrise operation of oversized loads.

50. There were no applicable exceptions under Pennsylvania law that would have authorized Defendant Cassidy to operate the oversized load prior to sunrise on the morning of November 7, 2024.

51. Defendant Cassidy's operation of the oversized load in the pre-dawn darkness, in violation of state law, created an unreasonable and foreseeable risk of serious harm to motorists lawfully traveling on Sunbury Road.

52. As Plaintiff approached the intersection traveling southbound on Sunbury Road, she was unable to perceive the presence of the flatbed trailer blocking her lane of travel due to the lack of lighting on the trailer, the obstruction of reflective markings by the oversized load, and the pre-dawn darkness.

53. The collision occurred as Plaintiff's vehicle, traveling southbound in the right lane of Sunbury Road, impacted the side of the trailer which was positioned laterally across the southbound lane.

54. The point of initial impact was at the twelve o'clock position (front) of Plaintiff's vehicle and at approximately the nine o'clock position (left side) of Defendant's trailer.

55. The collision was a broadside-type impact in which Plaintiff's vehicle struck the side of the trailer that was obstructing her lane of travel.

56. The force of the collision caused severe and disabling damage to Plaintiff's vehicle, causing the deployment of the front airbags.

57. Both vehicles remained at the point of initial impact and came to rest at the scene of the collision.

58. As a direct and immediate result of the collision, Plaintiff sustained critical polytrauma and life-threatening injuries. Including, but not limited to critical polytrauma with Grade 4 liver injury, Grade 4 spleen injury, Grade 3 right renal injury, right adrenal contusion, multiple rib fractures, right pneumothorax, right subtalar/ankle fracture, right patellar/knee fracture, bilateral knee lacerations, nasal bone fracture, facial lacerations, and facial abrasions. Her traumatic injuries also included bilateral pulmonary contusions, trace left pneumothorax, hemoperitoneum, right renal artery intimal injury, right knee hemarthrosis, acute hypoxic respiratory failure, hemorrhagic shock, acute blood loss anemia, and lactic acidosis. As a result of these injuries, Ms. Deleon required emergent and invasive treatment, including splenic embolization, right chest tube placement, repair of facial lacerations, closed reduction and pinning of the right subtalar joint, surgical debridement and fixation of an open comminuted right patella fracture, closure of right and left knee lacerations, and later open treatment of a right comminuted talar neck fracture with internal fixation.

59. Emergency medical personnel from the Friendship Fire Company responded to the scene and found Plaintiff in critical condition requiring immediate emergency transport.

60. Plaintiff was transported by ambulance to Geisinger Medical Center in Danville, Pennsylvania, where she was admitted in critical condition.

61. Upon arrival at Geisinger Medical Center, Plaintiff underwent emergency lifesaving treatment in the emergency room and was subsequently admitted to the Intensive Care Unit.

62. Plaintiff required emergency surgical procedures including insertion of chest tubes for her collapsed lungs, emergency airway insertion, open reduction internal fixation of her right ankle, and open reduction internal fixation of her right knee.

63. Plaintiff remained hospitalized at Geisinger Medical Center from November 7, 2024, through approximately November 20, 2024, a period of approximately fourteen days.

64. Following her acute hospitalization, Plaintiff was transferred to Geisinger Encompass Health Rehabilitation Hospital where she underwent intensive inpatient rehabilitation including physical therapy, occupational therapy, and speech-language pathology services.

65. Plaintiff remained at the inpatient rehabilitation facility until approximately December 4, 2024.

66. Upon discharge from inpatient rehabilitation, Plaintiff required extensive durable medical equipment including a hospital bed, wheelchair with

specialized cushions and leg rests, and a wheeled walker due to her severe mobility impairments.

67. Plaintiff has undergone and will continue to require extensive ongoing medical treatment, including a second major surgery on July 31, 2025, consisting of a subtalar arthrodesis (ankle fusion) procedure.

68. At the time of the crash, Defendant Cassidy was in violation of multiple provisions of the Federal Motor Carrier Safety Regulations, including but not limited to:

a. 49 C.F.R. § 392.2 (ill or fatigued operator);

b. 49 C.F.R. § 392.14 (failure to use hazard warning signals);

c. 49 C.F.R. § 392.22 (failure to ensure commercial motor vehicle is operated safely); and,

d. 49 C.F.R. § 393.11 (lighting devices and reflectors; requirements for adequate lighting and conspicuity).

69. At the time of the crash, Defendant Cassidy was in violation of multiple provisions of Pennsylvania law, including but not limited to:

a. 75 Pa.C.S.A. § 4303(a) (requirement for lamps and reflectors on vehicles);

b. 75 Pa.C.S.A. § 4901 (requirement for permits for oversized or overweight vehicles); and,

c. 75 Pa.C.S.A. § 4962 (prohibition on operation of oversized vehicles between sunset and sunrise).

70. Video evidence from the scene depicts the sunrise glare and low-light conditions existing at the time of the collision, confirming that visibility was severely compromised during the pre-dawn period.

71. Pennsylvania's statutory restriction on the movement of oversized commercial vehicles before sunrise, as codified in 75 Pa.C.S.A. § 4962, exists specifically because of conspicuity issues that cause other drivers to misperceive or fail to perceive large vehicles in low-light conditions.

72. When ambient illumination, contrast, and motion cues are insufficient, as they were in the pre-dawn darkness sixteen minutes before sunrise on November 7, 2024, human visual perception fails to detect roadway hazards in time for drivers to react and avoid collision.

73. The crash and Plaintiff's resulting catastrophic injuries were caused solely and exclusively by the negligence, carelessness, and recklessness of Defendants Cassidy and RYCO Lease and Repair, Inc. as described herein.

74. Plaintiff was traveling lawfully in her proper lane of travel on Sunbury Road at the time Defendant Cassidy's trailer blocked her lane of travel.

75. Plaintiff had no reason to anticipate that an oversized commercial vehicle would be blocking both lanes of Sunbury Road in violation of state and federal safety regulations.

76. Plaintiff had no reason to anticipate that a commercial trailer would be positioned across her lane of travel without adequate lighting or conspicuity markings during the pre-dawn darkness.

77. The oversized load being operated by Defendant Cassidy in violation of Pennsylvania law, combined with the inadequate lighting and obstructed reflective markings on the trailer, created a hazard that was effectively invisible to Plaintiff until it was too late to avoid collision.

78. At all material times, Plaintiff was unaware of and had no reason to know of the presence of Defendant's trailer blocking the southbound lane of Sunbury Road due to the lack of adequate lighting, the obstruction of reflective markings, and the pre-dawn darkness existing sixteen minutes before sunrise.

79. As a direct and proximate result of the crash and the negligence, carelessness, and recklessness of Defendants Cassidy and RYCO Lease and Repair, Inc., Plaintiff has suffered and will continue to suffer severe, permanent, and catastrophic injuries, economic damages, and non-economic damages as more fully described herein.

**COUNT I**

**Angelica Deleon vs. Gerald Cassidy**

**Negligence/Recklessness**

80. The preceding paragraphs are incorporated herein by reference as though fully set forth.

81. The recklessness, carelessness, and negligence of Defendant Cassidy, individually and as agent, servant, workman and employee of RYCO Lease and Repair, Inc., consisted of the following:

a. Failing to maintain proper and adequate control of his tractor-trailer so as to avoid crashing into Plaintiff;

b. Failing to ensure that the roadway was clear and safe before executing a left-hand turn onto Sunbury Road;

c. Operating an oversized load on the roadways of Pennsylvania in violation of 75 Pa.C.S.A. § 4962 by moving the vehicle before sunrise;

d. Operating the tractor-trailer at 6:29 a.m., which was sixteen minutes before the scheduled sunrise time of 6:45 a.m., in direct violation of Pennsylvania law;

e. Operating the tractor-trailer without proper lighting and illumination on the sides of the trailer;

f. Operating the tractor-trailer with reflective tape and conspicuity markings obstructed by the oversized load of excavator tracks;

g. Failing to use hazard warning lights when stopped or moving slowly across a public roadway;

h. Failing to deploy warning devices when creating a roadway hazard by blocking both lanes of travel;

i. Failing to ensure that the oversized load was properly marked, lighted, and visible to approaching motorists;

j. Violating 49 C.F.R. § 392.14 by failing to use hazard warning signals when appropriate;

k. Violating 49 C.F.R. § 392.22 by failing to ensure the commercial motor vehicle was operated safely;

l. Violating 49 C.F.R. § 393.11 by failing to ensure adequate lighting devices and reflectors were displayed and visible;

m. Violating 75 Pa.C.S.A. § 4303(a) by failing to maintain required lamps and reflectors on the vehicle;

n. Violating 75 Pa.C.S.A. § 4901 by operating an oversized vehicle without proper authorization during prohibited hours;

o. Violating 75 Pa.C.S.A. § 4962 by operating an oversized load during the prohibited time period between sunset and sunrise;

p. Failing to maintain a proper lookout for vehicles lawfully traveling on Sunbury Road;

q. Failing to yield the right-of-way to oncoming traffic;

r. Failing to take evasive action to avoid blocking the southbound lane of travel;

s. Failing to properly inspect the tractor-trailer to ensure compliance with lighting and conspicuity requirements;

t. Failing to ensure the tractor-trailer complied with federal and state safety standards;

u. Operating the tractor-trailer in a manner that created an unreasonable and foreseeable risk of serious harm to other motorists;

v. Blocking both lanes of a public roadway during pre-dawn darkness with an inadequately lit and marked trailer; and

w. Acting with conscious disregard for the safety and rights of Plaintiff and other motorists by knowingly operating an oversized load in violation of Pennsylvania law during prohibited hours and in conditions of darkness that rendered the trailer effectively invisible to approaching traffic.

82. As a direct and proximate result of the recklessness, carelessness, and negligence of Defendant Cassidy, Plaintiff Angelica Deleon sustained the injuries set forth herein.

83. As a result of the recklessness, carelessness, and negligence of Defendant Cassidy, Plaintiff was forced to incur liability for emergency medical

treatment, hospitalization, surgical procedures, inpatient rehabilitation, medications, durable medical equipment, ongoing medical care, and similar medical expenses in an effort to restore herself to health, and claim is made therefor.

84. As a result of the aforesaid injuries, Plaintiff has undergone and, in the future, will undergo great physical and mental pain and suffering, great inconvenience in carrying out daily activities, loss of life's pleasures and enjoyment, and claim is made therefor.

85. As a result of the aforesaid injuries, Plaintiff has been and, in the future, will be subject to great humiliation and embarrassment, and claim is made therefor.

86. As a result of the aforesaid injuries, Plaintiff has sustained a loss of wages, loss of future earnings, and a loss of earning capacity, and claim is made therefor.

WHEREFORE, Plaintiff Angelica Deleon demands judgment in her favor and against Defendant Gerald Cassidy in an amount in excess of $150,000.00, together with interest, delay damages and punitive damages.

**COUNT II**

**Angelica Deleon vs. RYCO Lease and Repair, Inc.,**
**as being vicariously liable for Defendant Cassidy**

**<u>Negligence/Recklessness</u>**

87. The preceding paragraphs are incorporated herein by reference as though fully set forth.

88. Defendant RYCO Lease and Repair, Inc. is vicariously liable for the reckless, careless, and negligent actions of Defendant Cassidy as follows:

a. Failing to maintain proper and adequate control of his tractor-trailer so as to avoid crashing into Plaintiff;

b. Failing to ensure that the roadway was clear and safe before executing a left-hand turn onto Sunbury Road;

c. Operating an oversized load on the roadways of Pennsylvania in violation of 75 Pa.C.S.A. § 4962 by moving the vehicle before sunrise;

d. Operating the tractor-trailer at 6:29 a.m., which was sixteen minutes before the scheduled sunrise time of 6:45 a.m., in direct violation of Pennsylvania law;

e. Operating the tractor-trailer without proper lighting and illumination on the sides of the trailer;

f. Operating the tractor-trailer with reflective tape and conspicuity markings obstructed by the oversized load of excavator tracks;

g. Failing to use hazard warning lights when stopped or moving slowly across a public roadway;

h. Failing to deploy warning devices when creating a roadway hazard by blocking both lanes of travel;

i. Failing to ensure that the oversized load was properly marked, lighted, and visible to approaching motorists;

j. Violating 49 C.F.R. § 392.2 by failing to ensure the safe operation of the commercial motor vehicle;

k. Violating 49 C.F.R. § 392.14 by failing to use hazard warning signals when appropriate;

l. Violating 49 C.F.R. § 392.22 by failing to ensure the commercial motor vehicle was operated safely;

m. Violating 49 C.F.R. § 393.11 by failing to ensure adequate lighting devices and reflectors were displayed and visible;

n. Violating 75 Pa.C.S.A. § 4303(a) by failing to maintain required lamps and reflectors on the vehicle;

o. Violating 75 Pa.C.S.A. § 4901 by operating an oversized vehicle without proper authorization during prohibited hours;

p. Violating 75 Pa.C.S.A. § 4962 by operating an oversized load during the prohibited time period between sunset and sunrise;

q. Failing to maintain a proper lookout for vehicles lawfully traveling on Sunbury Road;

r. Failing to yield the right-of-way to oncoming traffic;

s. Failing to take evasive action to avoid blocking the southbound lane of travel;

t. Failing to properly inspect the tractor-trailer to ensure compliance with lighting and conspicuity requirements;

u. Failing to ensure the tractor-trailer complied with federal and state safety standards;

v. Operating the tractor-trailer in a manner that created an unreasonable and foreseeable risk of serious harm to other motorists;

w. Blocking both lanes of a public roadway during pre-dawn darkness with an inadequately lit and marked trailer; and

x. Acting with conscious disregard for the safety and rights of Plaintiff and other motorists by knowingly operating an oversized load in violation of Pennsylvania law during prohibited hours and in conditions of darkness that rendered the trailer effectively invisible to approaching traffic.

89. As a direct and proximate result of the recklessness, carelessness, and negligence of Defendant RYCO, Plaintiff Angelica Deleon sustained the injuries set forth herein.

90. As a result of the recklessness, carelessness, and negligence of Defendant RYCO, Plaintiff was forced to incur liability for emergency medical

treatment, hospitalization, surgical procedures, inpatient rehabilitation, medications, durable medical equipment, ongoing medical care, and similar medical expenses in an effort to restore herself to health, and claim is made therefor.

91. As a result of the aforesaid injuries, Plaintiff has undergone and, in the future, will undergo great physical and mental pain and suffering, great inconvenience in carrying out daily activities, loss of life's pleasures and enjoyment, and claim is made therefor.

92. As a result of the aforesaid injuries, Plaintiff has been and, in the future, will be subject to great humiliation and embarrassment, and claim is made therefor.

93. As a result of the aforesaid injuries, Plaintiff has sustained a loss of wages, loss of future earnings, and a loss of earning capacity, and claim is made therefor.

**WHEREFORE**, Plaintiff Angelica Deleon hereby seeks all damages including punitive damages from Defendant RYCO Lease and Repair, Inc., as being vicariously liable for Defendant Cassidy, in an amount in excess of $150,000.00, together with interest, delay damages and punitive damages.

## COUNT III

## Angelica Deleon vs. RYCO Lease and Repair, Inc.

**Negligent Hiring, Supervision, Retention, and Selection**

94. The preceding paragraphs are incorporated herein by reference as though fully set forth.

95. Defendant RYCO Lease and Repair, Inc. had an obligation and duty to hire, retain, and supervise drivers who operate their tractors and trailers in a safe manner, and to maintain, inspect, and operate its commercial motor vehicles and oversized loads in compliance with all applicable state and federal safety regulations.

96. Plaintiff Angelica Deleon was catastrophically injured as a result of Defendant RYCO Lease and Repair, Inc.'s unsafe hiring, training, supervision, retention, maintenance practices, and operation of its commercial motor vehicle.

97. The carelessness and negligence of Defendant RYCO Lease and Repair, Inc., individually and through its various employees, agents, servants, and workers, consisted of the following:

a. Failing to properly train, monitor, and supervise its employees, drivers, and/or agents, including, but not limited to, Defendant Cassidy;

b. Hiring and/or continuing to employ Defendant Cassidy despite the fact that they knew or should have known that he would operate commercial vehicles in violation of state and federal safety regulations;

c. Permitting Defendant Cassidy to operate a commercial motor vehicle hauling an oversized load when it knew or should have known he was not properly trained to do so in compliance with Pennsylvania law;

d. Failing to train and/or properly train Defendant Cassidy regarding Pennsylvania's prohibition on operating oversized loads between sunset and sunrise pursuant to 67 Pa.C.S. Section 179.10 and 75 Pa.C.S.A. Section 4962;

e. Failing to train and/or properly train Defendant Cassidy regarding proper routes for oversized loads traveling to and from Merck & Co. Inc. in Riverside, Pennsylvania;

f. Allowing Defendant Cassidy to operate a commercial motor vehicle and trailer hauling an oversized load when they knew or should have known that such operation during prohibited hours posed a risk of serious bodily injury or death to others lawfully on the roadway;

g. Failing to adopt and/or enforce appropriate employee manuals and/or training procedures regarding oversized load operations;

h. Failing to enforce both the written and unwritten safety policies regarding oversized load transportation and lighting requirements;

i. Failing to ensure that their employees, drivers, and/or agents were aware of and complied with written and unwritten safety policies;

j. Failing to implement and/or enforce an effective safety system;

k. Failing to ensure that their management personnel and drivers were aware of the requirements of the FMCSA regulations including 49 C.F.R. Sections 392.2, 392.14, 392.22, and 393.11;

l. Failing to ensure that their employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

m. Failing to ensure that their employees, drivers, and/or agents were aware of and complied with the rules, laws, regulations, and industry standards pertaining to and governing the operation of commercial motor vehicles, including Pennsylvania statutes 75 Pa.C.S.A. Sections 4303(a), 4901, and 4962;

n. Operating an oversized load in violation of 67 Pa.C.S. Section 179.10 and 75 Pa.C.S.A. Section 4962 by permitting movement of the vehicle before sunrise;

o. Operating an oversized load at 6:29 a.m., which was sixteen minutes before the scheduled sunrise time of 6:45 a.m., in direct violation of Pennsylvania law;

p. Failing to properly mark, light, or make the oversized load conspicuous to other motorists as required by state and federal regulations;

q. Failing to ensure the vehicle had proper lighting and reflectors on all sides of the trailer as required by 49 C.F.R. Section 393.11 and 75 Pa.C.S.A. Section 4303(a);

r. Allowing the oversized load of excavator tracks to obstruct the reflective markings and conspicuity tape required to be displayed on the sides of the trailer;

s. Failing to properly inspect and maintain the vehicle to ensure compliance with lighting and conspicuity requirements;

t. Using an improper route for oversized loads by permitting operation through the intersection of Avenue D and Sunbury Road instead of the designated commercial vehicle route via Merck Road;

u. Failing to obtain or comply with the terms of required permits for oversized loads, including the prohibition on pre-sunrise operation;

v. Failing to ensure compliance with FMCSR equipment requirements for commercial motor vehicles;

w. Failing to have an appropriate disciplinary policy for drivers who violate state and federal safety regulations;

x. Permitting its vehicle out-of-service rate to exceed acceptable safety standards, demonstrating systemic problems with vehicle maintenance and inspection;

y. Failing to monitor and/or regulate their drivers' actions and compliance with oversized load regulations; and

z. Operating and permitting the operation of an oversized load during prohibited hours with inadequate lighting and obstructed conspicuity markings, thereby creating an unreasonable and foreseeable risk of serious harm to the motoring public.

98. As a direct and proximate result of the recklessness, carelessness, and negligence of Defendant RYCO, Plaintiff Angelica Deleon sustained the injuries set forth herein.

99. As a result of the recklessness, carelessness, and negligence of Defendant RYCO, Plaintiff was forced to incur liability for emergency medical treatment, hospitalization, surgical procedures, inpatient rehabilitation, medications, durable medical equipment, ongoing medical care, and similar medical expenses in an effort to restore herself to health, and claim is made therefor.

100. As a result of the aforesaid injuries, Plaintiff has undergone and, in the future, will undergo great physical and mental pain and suffering, great inconvenience in carrying out daily activities, loss of life's pleasures and enjoyment, and claim is made therefor.

101. As a result of the aforesaid injuries, Plaintiff has been and, in the future, will be subject to great humiliation and embarrassment, and claim is made therefor.

102. As a result of the aforesaid injuries, Plaintiff has sustained a loss of wages, loss of future earnings, and a loss of earning capacity, and claim is made therefor.

**WHEREFORE**, Plaintiff Angelica Deleon hereby seeks all damages including punitive damages from Defendant RYCO Lease and Repair, Inc. in an amount in excess of $150,000.00, together with interest, and delay damages.

**JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

DATE: OCTOBER 9, 2026

FANELLI, EVANS & PATEL, P.C.

MICHAEL B. SMITH, ESQUIRE
I.D. No. 207158
No. 1 Mahantongo Street
Pottsville, PA 17901
P. (570) 622-2455
F. (570) 622-5336
E: msmith@feplawyers.com
*Attorney for Plaintiff*

**VERIFICATION**

I, ANGELICA DELEON, hereby verify that the facts set forth in the Complaint are true and correct to the best of my personal knowledge, information, and belief. I further understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsifications to authorities.

DocuSigned by:
471574966C5F4CB...

ANGELICA DELEON

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGELICA DELEON,<br>PLAINTIFF, | : | |
| | : | |
| VS. | : | DOCKET NO. ________________ |
| | : | |
| GERALD CASSIDY AND<br>RYCO LEASE AND REPAIR, INC.,<br>DEFENDANTS. | :<br>:<br>: | JURY TRIAL DEMANDED |

**CERTIFICATE OF COMPLIANCE**

I, Michael B. Smith, Esquire, certify that on behalf of the Plaintiffs, this Complaint complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

FANELLI, EVANS & PATEL, P.C.

DATE: OCTOBER 9, 2026

______________________________
MICHAEL B. SMITH, ESQUIRE
I.D. No. 207158
No. 1 Mahantongo Street
Pottsville, PA 17901
P. (570) 622-2455
F. (570) 622-5336
E: msmith@feplawyers.com
*Attorney for Plaintiff*